UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JEFFERY ALLAN HATFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CV-214-HAI |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, *Commissioner of* ) | |
| *Social Security*, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On December 29, 2017, Plaintiff Jeffery Allan Hatfield filed a protective Title II application for disability insurance benefits and a Title XVI application for supplemental security income. *See* D.E. 12-1 at 12.[1] This was his second such application. His first application was denied by Administrative Law Judge ("ALJ") decision on March 22, 2017. *Id.* at 55. For his second application, Hatfield dates the beginning of his disability period to December 29, 2017. *Id.* at 12.

Hatfield claims he is disabled due to anxiety, depression, a skin infection, a right hip disorder, a right shoulder disorder, a staph problem, and testicular pain. *Id*. at 17. The Social Security Administration denied Hatfield's claims initially on June 11, 2018, and upon reconsideration on November 13, 2018. *Id*. at 12. Then, on November 29, 2018, upon Hatfield's request, ALJ Jennifer Thomas conducted an administrative hearing. *Id*. The ALJ heard testimony from Hatfield and impartial vocational expert ("VE") William J. Kiger. *Id*. He was

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

1

found to not be disabled during the relevant period, December 29, 2017, to February 18, 2020, the date of the decision.

Hatfield brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits. Both parties consented to the referral of this matter to a magistrate judge. D.E. 15. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 14. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 21) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 25).

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case. *See* D.E. 12-1 at 14-22.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Hatfield had not engaged in substantial gainful activity since December 29, 2017, the alleged onset date. D.E. 12-1 at 14.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities,

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Hatfield experiences the severe impairments of adjustment disorder, right hip osteoarthritis, right should osteoarthritis, depressive disorder, skin disorder, and anxiety. D.E. 12-1 at 14.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Hatfield failed to meet this standard. D.E. 12-1 at 15-16.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found Hatfield had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl. He can understand, remember and carry out simple instructions and procedures. He can maintain concentration, persistence and pace for the completion of simple instructions and procedures in 2 hour segments of time in an 8 hour workday. He can have occasional interaction with coworkers, supervisors and the general public. He should [sic] in an object focused setting.

*Id.* at 16.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Hatfield was "unable to perform any past relevant work." D.E. 12-1 at 20.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Hatfield was not disabled at this step.

D.E. 12-1 at 21. The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.* The ALJ accepted the VE's testimony that Hatfield could find work as, for example, a marker, housekeeping clerk, and router. *Id.* Because sufficient work existed in the national economy that Hatfield could perform, the ALJ found him "not disabled" as defined by the regulations. *Id.*

Accordingly, on February 18, 2020, the ALJ issued an unfavorable decision, finding that Hatfield was not disabled, and was therefore ineligible for disability insurance benefits. D.E. 12-1 at 22. The Appeals Council declined to review the ALJ's decision on August 26, 2020. *Id.* at 1.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors.  20 C.F.R. § 416.920c(c).  Supportability and consistency "are the most important factors" in weighing medical opinions.  *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility.  The ALJ must consider statements or reports from the claimant.  20 C.F.R. § 404.1529(a).  To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3]  It is within the province of the ALJ, rather than the reviewing court, to evaluate

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III. Analysis

Hatfield argues the ALJ "completely disregarded" or "failed to properly address" his skin disorder, why she found his "condition had improved from the time of the prior ALJ decision[,]" and certain findings and opinions by state agency mental health consultant Leigh Ford, Ph.D., and treating physician Syed Raza, MD. D.E. 21-1 at 12-14. On the contrary, the ALJ addressed each of these, so none of them was "disregarded" or unaddressed. Instead, Hatfield merely invites this Court to reweigh the evidence.

### A.

First, Hatfield states that:

The ALJ found the Plaintiff only suffered from severe impairments regarding his adjustment disorder, right hip osteoarthritis, right shoulder osteoarthritis,

---

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

>depressive disorder, skin disorder and anxiety, however, in the RFC, the ALJ determined that he could perform light work, but only restricted him and gave him mild physical and psychological restrictions. . . .

D.E. 21-1 at 12. Hatfield fails to articulate any clear argument as to why the RFC finding was in error. The ALJ explained that, while she did fully consider the medical opinions and prior administrative medical findings, she did not defer or give any specific controlling weight to any prior medical findings or opinions. D.E. 12-1 at 18; *see* 20 C.F.R. § 416.920c. "Light work" is defined as:

>lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ directly addressed the findings of state agency medical consultant Dr. Back regarding Hatfield's physical capabilities:

>Also, the opinion of state agency medical consultant Douglas Back, MD is found to be only partially persuasive because although he reviewed the file to render an opinion, his opinion is inconsistent, in part, with the record as a whole. While Dr. Reed inaccurately determined that the claimant could lift 50 pounds occasionally and 25 pounds frequently, he correctly determined that the claimant was limited in ability to perform postural activities, such as stooping, kneeling, crouching and crawling, frequently (B10A). Identifying the severity of the claimant's lifting ability in this way understates the physical problems experienced by the claimant and does not accurately reflect his abilities as described in testimony offered at the hearing, statements made by the claimant to his treating physicians, and the observations made by various medical professionals in connection with the treatment or examination of the claimant. In addition, a medium lifting capability fails to correspond to the claimant's radiological imaging showing osteoarthritis in the hip or the claimant's history of physical therapy sessions (B19F, B25F). In fact, there is no evidence in the file to suggest that such a significant capability

> exists for the claimant. As such, an exertional level of light is more appropriate for the claimant given the medical record as a whole.

D.E. 12-1 at 18-19. The ALJ explained that Dr. Back's findings regarding Hatfield's ability to lift 50 pounds occasionally and 25 pounds frequently were inaccurate and inconsistent with statements made by Hatfield and the other medical opinions of record. *Id.* Thus, the ALJ found that a light exertional level was most appropriate. *Id.* However, the ALJ did find that Dr. Back's opinion regarding Hatfield's ability to perform postural activities was accurate. *Id.* The ALJ specifically addressed some inconsistencies between Hatfield's alleged symptoms pertaining to his osteoarthritis and the medical evidence:

> In terms of the claimant's osteoarthritis, an MRI of the claimant's left knee showed only mild changes of osteoarthritis in the knee joint and a normal lumbar spine scan (B14F). A May 2018 x-ray of the claimant's left knee showed a grade 2 tricompartmental degenerative joint disease and possible tiny loose body (B21F). In June 2018 the claimant showed a compromised right hip abduction, abduction and flexion (B19F). In July 2019 an x-ray was taken of the claimant's right hip and although there was grade 1 degenerative osteoarthritis of the bilateral hips and possible CAM-type of the femoro-acetabular impingement identified, there were no acute osseous or joint abnormalities (B25F). Also in July 2019 there is a claim of shoulder pain by the claimant; however, despite being offered a physical therapy evaluation the claimant declined (B26F). An x-ray of the claimant shoulder showed mild degenerative changes about the AC joint space and the glenoid labrum with no fractures or loose bodies identified (B26F).

*Id.* at 17. The ALJ pointed out the "mild changes" of osteoarthritis in Hatfield's knee joint and a normal lumbar spine scan, as well as the existence of "no acute osseous or joint abnormalities of his right hip. *Id.*

As later discussed in more depth, the ALJ also addressed the medical opinions regarding Hatfield's mental capabilities and how persuasive she found each of them. The ALJ clearly adjusted the RFC determination to address each of these findings regarding both Hatfield's mental and physical capabilities. Hatfield does not argue that the ALJ's assessment of Dr. Back's findings was in error. Nor does he argue that the ALJ's RFC finding was unsupported by

substantial evidence. None of these potential arguments is sufficiently developed; they are effectively waived.

**B.**

Second, Hatfield argues the ALJ "did not even address that he suffered from a skin disorder." D.E. 21-1 at 12. The ALJ did in fact address Hatfield's skin disorder:

> Finally, with respect to his skin disorders, the medical records show the claimant has had skin lesions on his head since 2015 (B14F). According to the claimant's testimony, he also suffers from boils that form on his face and neck and increase as his stress levels increase. However, there is nothing in the medical record to indicate that these skin disorders preclude him from performing work related activities.

D.E. 12-1 at 18. Hatfield's argument that the ALJ did not address his skin disorder is clearly contradicted by the record. Hatfield provides no further explanation or argument as to any error in the ALJ's findings regarding his skin disorder. At bottom, Hatfield's argument that the ALJ failed to consider his skin disorder is not sufficiently developed. In making this argument, he offers no specific references to the record. D.E. 21-1 at 12. This argument is waived.

**C.**

Third, Hatfield argues the ALJ "failed to address why he found [his] condition had improved from the time of the prior ALJ decision which limited him to 'infrequent' contact with coworkers, supervisors and the public." D.E. 21-1 at 13. Hatfield argues that the ALJ's finding that he can have "occasional" interaction with coworkers, supervisors, and the public is an improvement from the prior ALJ's finding that he can only have "infrequent" interaction. *Id.* at 12-13. Hatfield argues that the ALJ failed to follow *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990). D.E. 21-1 at 12-13. In *Drummond*, the Sixth Circuit held that, because no substantial evidence was introduced that the claimant's condition improved significantly since the denial of

9

her first application for benefits, the second ALJ was bound by the first ALJ's RFC determination. *Drummond*, 907 F.3d at 843. Similarly, in *Dennard*, the Sixth Circuit remanded to the Social Security Administration Secretary to determine whether a claimant was disabled while considering a prior administrative determination that he could not return to his past work. *Dennard*, 907 F.2d at 600.

As the Commissioner points out, the Sixth Circuit has since clarified that its ruling in *Drummond* was somewhat of an "overstatement" and "do[es] not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931, 933 (6th Cir. 2018). Each of Hatfield's applications involved distinct periods of time. The first application covered July 1, 2014, through March 22, 2017. D.E. 12-1 at 47, 55. The current application covered December 29, 2017, through February 18, 2020. *Id.* at 12, 22. Thus, the ALJ was not precluded from giving Hatfield's second application a "fresh look." The ALJ found the Dr. Guerrero's opinion to be persuasive and afforded Dr. Ford's opinion partial weight, both of whom concluded that Hatfield is moderately limited in interacting with coworkers and the public. *Id.* at 18-19.

Hatfield fails to explain how "infrequent" interactions with others is "clearly more restrictive" than "occasional" ones. D.E. 21-1 at 13. Further, Hatfield cites to caselaw that is irrelevant to the instant case. The ALJ's RFC determination regarding Hatfield's ability to interact with others is not contradictory to law or unsupported by substantial evidence.

**D.**

Fourth, Hatfield argues the ALJ "failed to properly address his psychological impairments and restrictions for those." D.E. 21-1 at 13. In support of his argument, Hatfield cites the opinions of Dr. Raza and indicates that the ALJ did not properly address them in making her RFC finding. *Id.* at 13-14. Hatfield argues that "[g]reater weight should be given to that of an examining source then that of a medical opinion to a non-examining source." *Id.* at 12. To be clear, although there used to be a "treating-source rule," that rule was rescinded prior to Hatfield's application for benefits; now all medical opinions are weighed under the same standards. *See* 20 C.F.R. § 416.920c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01. Again, Hatfield relies on inapplicable authority in support of his argument.

> The ALJ directly addressed the findings of Dr. Raza:
>
> Finally, the opinion of Syed Raza, MD., is found to be only unpersuasive despite his treatment of the claimant because he offers his opinion in the format of a generic checklist that is not accompanied by any persuasive rationale (B27F). According to Dr. Raza, the claimant has a poor ability to follow work rules, deal with stresses, use judgement and function independently. Such positions are inconsistent with the record because there is evidence the claimant can apply information, concentrate and deal with stress well enough to shop in public, manage personal finances, drive a car and prepare for and participate in a hearing for benefits (B4E, B18F, SSA hearing).

D.E. 12-1 at 19. The ALJ considered Dr. Raza's opinions under the standards in the regulations, which require that all medical opinions be weighed in light of their supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

11

Here, the ALJ clearly found that Dr. Raza's opinions lacked adequate support because his opinion was offered in the form of a checklist that was not accompanied by persuasive rationale. D.E. 12-1 at 19 (citing *id*. at 783-84). It should be noted that the form itself, in all-capital letters, states, "IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY ASSESSED LIMITATION IN CAPACITY. THE USEFULNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT TO WHICH YOU DO THIS." *Id*. at 783. Dr. Raza rated Hatfield "fair" or "poor" in every single domain, but provided few "particular medical findings" in support of these limitations that the ALJ found to be inconsistent with the record. In fact, under the "Making Personal/Social Adjustments," no additional rationale was provided. D.E. 12-1 at 784. As to the inconsistencies, the ALJ cited Dr. Ford's findings, Hatfield's own admissions, and the administrative hearing, which support that Hatfield can "shop in public, manage personal finances, drive a car and prepare for and participate in a hearing for benefits[,]" to contrast Dr. Raza's opinion that Hatfield "has a poor ability to follow work rules, deal with stresses, use judgment, and function independently." *Id.* at 19 (citing *id.* at 289-97, 695-98). The ALJ's finding that Dr. Raza's opinions were unpersuasive is not contrary to law or unsupported by substantial evidence.

### E.

Fifth, Hatfield argues "the ALJ's RFC is not even supported by the consultative exam completed by Dr. Ford." D.E. 21-1 at 13. Hatfield cites Dr. Ford's opinions regarding his ability to tolerate and respond to stress and pressures in a work environment. *Id.* at 13-14. Like with Dr. Raza, Hatfield argues that the ALJ did not properly address Dr. Ford's opinion. *Id.* at 14.

The ALJ directly addressed the findings of Dr. Ford:

> As for the opinion evidence, partial weight is given to state agency mental health consultant Leigh Ford, PhD., because although she offered an opinion that is largely consistent with the record as a whole, his opinion is based only on a single clinical interaction with the claimant and does not offer a longitudinal view of the claimant's symptoms or treatment. Such insight would be useful in providing a more informative encapsulation of the claimant's abilities and limitations. In addition, Dr. Ford's opinion is only partially persuasive because she overstated the claimant's inability to deal with stress and, as such, is inconsistent with the record as a whole. Dr. Ford's conclusion that the claimant's ability to tolerate stress and pressure of daily employment is moderately to markedly limited is excessive and not supported by the medical record (B18F). Nonetheless, Dr. Ford's conclusion that the claimant is moderately limited in conducting social interactions and not limited in performing simple tasks is consistent with the record. Further, his diagnostic impression that the claimant suffers from both a depression and generalized anxiety disorder is consistent with the claimant's testimony and the impressions of other mental health professionals, such as Dr. Guerrero, who have reviewed this file.

D.E. 12-1 at 19. The ALJ found that Dr. Ford's opinion regarding Hatfield's ability to tolerate stress was overstated and not supported by the medical record. *Id.* Specifically, the ALJ noted that Dr. Ford's opinion was "based only on a single clinical interaction with [Hatfield] and does not offer a longitudinal view of [Hatfield's] symptoms or treatment." *Id.* Further, the ALJ found that Dr. Ford's opinion regarding Hatfield's ability to tolerate stress and pressure of daily employment was "excessive and not supported by the medical record." *Id.* Thus, the ALJ explained why Dr. Ford's opinions, specifically the findings pertaining to Hatfield's ability to tolerate pressure and interact with others, were not given full weight.

Further, the ALJ explained that she found the opinion of state agency mental health consultant Dr. Guerrero to be persuasive:

> Accordingly, the opinion of state agency mental health consultant Alex Guerrero, MD., is persuasive because he formed his opinion with the benefit of having reviewed the evidence in the file and because that opinion is consistent as a whole with the medical record. Dr. Guerrero found that the claimant had only mild or moderate limitations in the restriction of activities involving the ability to understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself (B10A). In addition, Dr. Guerrero stated that although the claimant was moderately limited in carrying out

13

>detailed instructions, he was not significantly limited in carrying out short and simple instructions. Further, the claimant was found to be moderately limited in getting along with coworkers, responding appropriately to supervisors and interacting with the general public. The opinion of Dr. Guerrero is consistent with the record because there is evidence the claimant can apply information and concentrate well enough to shop, manage personal finances, drive a car, follow instructions to some degree and participate in other activities requiring the use of mentally based skills (B4E, B18F, SSA hearing). He can also sufficiently interact with others and control himself to attend physician visits and participate in a hearing for benefits (B4E, B18F, SSA hearing).

*Id.* at 18. The ALJ explained that she found Dr. Guerrero's findings to be consistent with the record. *Id.* The state agency disability determination explanation also states that the opinion of Dr. Ford is more restrictive "without substantial support from the medical source who made it, which renders it less persuasive." D.E. 12-1 at 167. The ALJ found Dr. Guerrero's opinions to be supported by evidence in the record that Hatfield can "apply information and concentrate well enough to shop, manage personal finances, drive a car, follow instructions to some degree and participate in other activities requiring the use of mentally based skill." *Id.* (citing *id.* at 289-97, 695-98). The ALJ also noted that the record reflected that Hatfield can "sufficiently interact with others and control himself to attend physician visits and participate in a hearing for benefits." *Id.* (citing *id.* at 289-97, 695-98). Thus, the ALJ explained the weight given to Dr. Guerrero's opinion and why this was appropriate in light of the record.

Hatfield states that Dr. Ford opined that he was moderately limited in his ability to tolerate stress and interact with others. D.E. 21-1 at 13-14. However, as discussed, the ALJ explained that these specific findings by Dr. Ford were excessive and inconsistent with the record. Hatfield does not explain how the ALJ's assessment of Dr. Ford's findings was in error. He does not even address that the ALJ found Dr. Guerrero's opinion to be persuasive and gave only partial weight to Dr. Ford's opinion. Nor does he explain how the RFC was unsupported by

14

substantial evidence. None of these potential arguments is sufficiently developed; they are effectively waived.

### F.

Finally, Hatfield states, "The ALJ erred by not considering the Plaintiff's pain and, therefore, this action should be reversed and remanded." D.E. 21-1 at 15. This is a boilerplate argument that Hatfield's attorney included verbatim in three other cases this Court recently reviewed. *Hall v. Kijakazi*, 6:20-CV-229-HAI, *Whitehead v. Kijakazi*, No. 6:20-CV-243-HAI; *Smith v. Kijakazi*, No. 6:20-CV-203-HAI.

The ALJ did in fact consider Hatfield's pain. The ALJ described Hatfield's testimony during the administrative hearing:

> He stated that he suffered from anxiety, depression, a skin infection, a right hip disorder, a right shoulder disorder, a staph problem and testicular pain. As a result of these impairments, he stated that he has testicular pain that is constant and prevents him from bending to pick things up. His skin condition causes boils to form underneath the joy line of his face and is aggravated with the stress levels. The boils that form are painful and spread to his face and upper lip. The pain in his right hip makes it difficult for him to walk and he needs to use a cane when the condition is severe. It is hard for him to lift his right arm above his head. He cannot hold much weight and it is difficult for him to perform daily activities with his right arm. He has severe pain in his lower back that is constant. He is limited to sitting for 15 to 20 minutes at a time. He cannot stand more than 15 to 20 minutes at a time before needing to change position. He cannot lift more than 10 pounds. He spends most of his time sitting in a recliner and watching TV to relieve his body of the pain. He has difficulty sleeping. He has difficulty being in large crowds of people. He loses interest very quickly and cannot stay focused. He does not participate in many of the hobbies he did when he was in better physical condition. He takes medication to lessen the impact of the symptoms, but his condition still limits his activities.

D.E. 12-1 at 17. The ALJ also addressed Hatfield's pain related to his osteoarthritis:

> In terms of the claimant's osteoarthritis, an MRI of the claimant's left knee showed only mild changes of osteoarthritis in the knee joint and a normal lumbar spine scan (B14F). A May 2018 x-ray of the claimant's left knee showed a grade 2 tricompartmental degenerative joint disease and possible tiny loose body (B21F). In June 2018 the claimant showed a compromised right hip abduction,

> abduction and flexion (B19F). In July 2019 an x-ray was taken of the claimant's right hip and although there was grade 1 degenerative osteoarthritis of the bilateral hips and possible CAM-type of the femoro-acetabular impingement identified, there were no acute osseous or joint abnormalities (B25F). Also in July 2019 there is a claim of shoulder pain by the claimant; however, despite being offered a physical therapy evaluation the claimant declined (B26F). An x-ray of the claimant shoulder showed mild degenerative changes about the AC joint space and the glenoid labrum with no fractures or loose bodies identified (B26F).

*Id.* At bottom, Hatfield's argument that the ALJ failed to consider his pain is not sufficiently developed. In making this argument, he offers no specific references to the record. D.E. 21-1 at 14-15. Hatfield's pain-level argument is waived.

In sum, Hatfield has not pointed to any legal error on the part of the ALJ. He argues certain opinions in the record should have been weighed differently. But the ALJ's decision was not unsupported by substantial evidence.

## IV. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)   Plaintiff's Motion for Summary Judgment (D.E. 21) is **DENIED**;

(2)   The Commissioner's Motion for Summary Judgment (D.E. 25) is **GRANTED**;

(3)   **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 7th day of February, 2022.



Signed By:
Hanly A. Ingram
United States Magistrate Judge